BOARD OF EDUCATION OF ANDERSON COUNTY, Appellants,

v.

Emmett CALVERT et al., D/B/A Kentucky Sporting Goods, Appellees.

BOARD OF EDUCATION OF ANDERSON COUNTY, Appellants,

v.

CHAMPION KNITWEAR COMPANY, Inc., Appellee.

BOARD OF EDUCATION OF ANDERSON COUNTY, Appellants,

v.

SUTCLIFFE COMPANY, Inc., Appellee,

Court of Appeals of Kentucky.

Feb. 27, 1959.

Ollie J. Bowen, Lawrenceburg, for appellants.

Walter Patrick, Lawrenceburg, Bernard B. Davis, Shelbyville, William A. Young, Frankfort, for appellees.

STEWART, Judge.

In these consolidated actions against the Board of Education of Anderson County (herein called the "Board"), the superintendent of Anderson County schools, and the principal and athletic coach of the Anderson High School, a judgment was awarded against the Board in favor of Emmett Cal-

vert and Clyde Calvert d/b/a Kentucky Sporting Goods for $208.51, Champion Knitwear Company, Inc., for $265.11, and The Sutcliffe Company, Inc., for $3,050.96. We shall mention other conditions of this judgment hereinafter.

As to the first two recoveries recited in the judgment, the Board has moved for an appeal as required by KRS 21.080, and, as to the third recovery against it of $3,050.96, it prosecutes an appeal from the circuit court.

This litigation grew out of purchases from time to time of athletic uniforms and equipment made by the principal and coach of Anderson High School during the school years 1952 through 1954. It is conceded that although the Board did not authorize the buying of any of the merchandise sued on, all the items of indebtedness involved in the cases at bar were created with the full knowledge and acquisecence of the Board. The goods bought were delivered to the school and used in its athletic program.

In accordance with what is understood to be the practice in most high schools in this state, high school sports have existed and been carried on at Anderson High School for many years as an extracurricular function. The Board has provided a football field, a basketball gymnasium and other facilities, and has regularly employed coaches to supervise the student personnel that participated in football, basketball and other ordinary high school games and exercises.

All financial support for the sports program at Anderson High School has heretofore been, and still is being, entirely supplied from revenue raised by student-teacher activities and not from any tax-derived monies. The primary source of such revenue is derived from admissions paid by patrons who attend football and basketball games sponsored by the school. Additionally, money is taken in at these contests from the sale of soft drinks, popcorn, peanuts and such other fare as migh appeal to sports spectators. Some of the receipts are raised by the labor of various student groups. The business end of the athletic program has been managed by the teachers and students and not by the Board. We shall hereinafter refer to the monies thus accumulated and expended to foster athletics as the "activities fund".

The Board has at all times asserted supervisory control over the activities fund, although such fund has been kept under the control of and administered by the principal. The Board has required monthly reports to be made to it of all income received and disbursements made from this fund; and it has caused regular audits to be made of the fund, paying the cost for such audits from its own tax-derived revenue. From time to time, surplus cash has been used from the activities fund to supplement the salary of those teachers employed to take on the extra duty of coaching athletics.

At the time the debts under discussion were created, there was not enough money available in the activities fund to liquidate them. However, in his findings of fact, the trial judge determined that on the date judgment was entered for plaintiffs below as to the three claims sued on there was a balance of $3620.63 in cash in the activities fund. It is obvious this amount would amply satisfy the sums sought in these consolidated actions.

A judgment was rendered against the Board in behalf of each of the parties plaintiff and for specified sums, all of which is shown in the first paragraph. The judgment then provided in substance that the principal of Anderson High School be authorized and directed to execute and deliver checks on the activities fund held by him as principal "for the amount now in said fund when and if required to do so" by the Board. Later in this opinion we shall construe the legal effect of this judgment in the light of the facts produced.

The Board's position in the cases at bar is that no judgment may be rendered against it for the indebtedness claimed because it entered into no contracts with any of the

plaintiffs below; nor did it at any time or in any way ratify or confirm the purchase of any of the merchandise in question. ·The attitude of the Board also seems to be that no bill that was incurred in the past, when the activities fund was depleted, should be paid at the present time, even though there be sufficient assets in the fund to satisfy it.

It is our view the Board's approach to the problem raised is an unrealistic one in the face of the proof presented. There is one primary question to be determined: May a board of education, under the circumstances outlined, refuse to allow a non-tax-derived fund created and maintained for a comprehensive athletic program to be applied toward the payment of debts incurred by those placed in charge of the fund for necessary items used in that program?

The Department of Education of Kentucky has taken cognizance of the fact that each year a great number of public high schools in this state engage extensively in athletic contests and acquire considerable revenue from gate receipts received from such contests. With this information in mind, the Department has issued Regulation 21.250 which, among other things, provides that all monies constituting income derived from athletic games, arising from student-teacher· endeavors and involving the use of school property, shall be under the control of the district board of education, and further directs that such district board of education shall be held responsible for an accounting in respect to the disbursement of all monies collected. This provision is also contained in the regulation: "The district board of education and superintendent may delegate this responsibility (the collection and disbursement of all such monies) to principals of the respective schools together with the authority commensurate with the delegated authority."

From the foregoing regulation, it is to be seen that no district board of education may be permitted to disavow its obligation to adopt some system of management for the type of fund under consideration here. The record does not reveal whether the Board consciously conformed to the above regulation in its dealings with the activities fund; but its conduct in overseeing the activities fund and its custom of allowing purchases to be made by the principal and the coach for athletic equipment and supplies follow so closely the prescribed conditions of the resolution that it may be said to have operated under its provisions when the debts now being litigated were created. This could be said to have the effect of stamping these debts with validity, since they came into existence by a course of conduct approved by the Department of Education.

■ It is our belief the Board in its general supervision of the activities fund has not acted in a governmental capacity, but rather in a quasi-private proprietary manner. It is undenied the monies in the fund are not tax-derived income, so that the legal precepts that ordinarily apply to revenue obtained by taxation for educational purposes do not apply. This being true, the Board cannot claim the same immunity as to the liability of the activities fund for the debts sued on that it could if the income sought to be subjected came through tax channels.

■■ It has been held that liability may be imposed upon an agency of government on the estoppel theory as regards debts created under special circumstances. Thus, right, justice and principles of common honesty may require that the doctrine of estoppel be applied to a municipality, acting in a proprietary capacity and in a matter not wholly ultra vires. This may arise when the party invoking the doctrine has parted with something of value or incurred a new burden in reliance upon the acts or conduct of the municipality or its officers and agents; or when the nonapplication of the doctrine will encourage or permit fraud, as where, the contract being intra vires and not prohibited by law, the municipality has accepted benefits thereunder. See 1 A.L.R.2d 353–356.

■ The instant cases fit into the elements which are generally used in fixing liability under estoppel. Undoubtedly it was not ultra vires for the Board to participate in an athletic program, and the carrying out of such a program was well within the powers granted unto it by the Legislature. Most certainly it has acted solely in a proprietary capacity in respect to its dealings with the activities fund, inasmuch as no income from taxes has in any wise been involved. Also, the claimants here have parted with merchandise of value, in reliance upon the acts and conduct, as well as the specific promises, of the authorized agents of the Board, namely, the high school principal and the coach. It follows that the non-application of the doctrine of estoppel in the cases at bar would sanction harsh injustice.

■ A few remarks about the legal effect of the judgment are now in order. The first paragraph of it, standing alone, indicates an absolute recovery was allowed against the Board as to the three debts. However, the judgment, considered in its entirety, shows that these actions were for the sequestration of property under the control of the Board. The proof amply supports the action of the lower court in rendering such a decree. Proceedings upon sequestration are in rem, and not in personam. See 47 Am.Jur., Sequestration, sec. 2, p. 696. In its total effect the judgment directs the Board, as trustee of the fund obtained from athletic contests and other student-teacher endeavors at Anderson High School, to pay the claims involved in this litigation out of the present assets in the activities fund and, if the claims are not then satisfied in full, any deficit shall be taken care of out of future accruals to this fund.

We conclude the trial judge correctly held the activities fund liable in the manner described for the three debts.

Wherefore, the judgment is affirmed.