**COMMONWEALTH of Kentucky ex rel. John B. BRECKINRIDGE, Attorney General of Kentucky, Appellant,**

**v.**

**Raymond C. COLLINS, Appellee.**

Court of Appeals of Kentucky.

April 24, 1964.

Rehearing Denied June 26, 1964.

J. Ervin Sanders, Pikeville, Stanley R. Hogg, Whitesburg, for appellant.

Stephen Combs, Jr., Whitesburg, John C. Anggelis, Lexington, for appellee.

MONTGOMERY, Judge.

Appellant unsuccessfully sought to have Raymond C. Collins ousted as a usurper of the office of member of the Letcher County Board of Education. The question is whether Collins, as board member, violated KRS 160.180(1) (e) and (2) through the sale of soft drinks to various schools.

Collins was elected in November 1960 and assumed office in January 1961 for a four-year term. During his term of office he has been the sales manager, secretary-treasurer, and principal stockholder of the Royal Crown Bottling Company, a firm engaged in the business of selling soft drinks in Letcher County. Since Collins was elected to the Board, this company has placed vending machines in various schools of the Letcher County school system and has sold soft drinks continuously to various schools, including Whitesburg, Kingdom Come, and Letcher high schools.

Monthly statements were submitted by Royal Crown Bottling Company to the principals of the schools, showing the amount of soft drinks purchased. In general the money collected from the sales was deposited in a bank to an account in the name of the school or an activity fund against which account checks in payment of the bills were drawn by the principal of the school. The principals of the various schools were required to submit monthly reports to the Letcher County Board of Education, showing balances in their respective activity fund accounts. A detailed annual report reflecting income and expenditures from the activity fund also was required.

The profit realized from such sales has been variously used to pay for athletic equipment, lime, paint, fencing, pencils, sharpeners, gravel, typewriters, paper, library books, instrument materials, repair of band equipment, and annual class trips. The funds involved have been reimbursed in part by the Board from school tax money. Some of the property so acquired was held as property of the county board of education and was accounted for on its inventories.

Appellant contends that such funds are school funds within the meaning of the statutes governing the operation of schools for the reason that they are used solely to promote public education and are under the control of the board of education.

Appellee argues that these are not school funds because they are kept separate and apart and are not comingled with tax money; no sales or payments involve the board or school funds; and the funds are raised by school children from various projects and belong to various class organizations. He further argues that such funds are not school funds as defined by KRS 157.010.

A reading of that statute reveals that it is a part of KRS, Chapter 157, entitled "State Support of Education." Therein, "the school fund" is defined as the fund dedicated by the "Constitution and laws of this Commonwealth for the purpose of sustaining a system of common schools therein," with six sources of annual revenue consisting of certain interest and dividends and "[s]uch sums as are appropriated by the General Assembly in aid of the common schools."

This statute does not undertake to define all funds that may be considered as school funds, but defines only what is considered to be the so-called "State school fund." Obviously, activity funds are not school funds within the meaning of KRS 157.010, but neither are revenues derived by local school districts from local taxes. Surely appellee would admit that moneys collected by local school districts by means of taxation are no less school funds; hence, KRS 157.010 has no application here.

The statute provides that the office of a board member "shall without further action be vacant" if such member "is directly or indirectly interested in the sale to the board of books, stationery or any other property, materials, supplies, equipment or services for which school funds are expended." KRS 160.180(1) (e) and (2). Each board has the control and management of all school funds and all school property of its district. KRS 160.290.

In Douglas v. Pittman, 239 Ky. 548, 39 S.W.2d 979, it was said:

"These statutes were enacted as safeguards upon the spending of public

funds and with the further view of throwing a wall of protection around the members of such bodies. Their duties as members could not thereby be influenced by selfish interests. The wisdom of such statutes is too apparent to need lengthy discussions."

In that case a board member who owned a one-third interest in a business which made several small sales to the board was held to have vacated his office despite his plea that he was not individually interested in the sales and received no profit from them. His interest in the company was held to be sufficient.

The Douglas case also answers appellee's contention that he should be excused because of proper motives and absence of profit. The office was held to have been vacated although the member's motives were proper and the sales were unprofitable.

Sales of commodities made by a board member to the high school principal for a lunchroom have been held sufficient basis for holding the office vacant. Brooks v. Commonwealth, Ky., 286 S.W.2d 913. One sale was a wholesale transaction in which the money received for the goods was returned to the company. The other sale was for his wife's store held in her name "for Internal Revenue purposes." In condemning such transactions by a board member, the Court said, "that KRS 160.180 prohibits any direct or indirect interest in sales to the board."

In Board of Education of Anderson County v. Calvert, Ky., 321 S.W.2d 413, the board was held liable for obligations incurred by the "activities fund" where the indebtedness was incurred with full knowledge of the board and under its supervisory control. The primary sources of revenue for the "activities fund" were admissions to high school athletic contests and "sale of soft drinks, popcorn, peanuts and such other fare." Reference was made therein to the same set of regulatory controls over such funds as appear to have been in effect here.

In the light of these cases and of the evident legislative intent, it is concluded that such activity funds are school funds over which the board has full control and as such come within the purview of KRS 160.180. Such statute has a salutary purpose and should be so construed. It is plain that appellee made such sales on behalf of a company in which he had a substantial interest and that he had such interest as was intended to be condemned by the statute. In making such sales he vacated the office of board member.

Judgment reversed.