**COMMONWEALTH of Kentucky ex rel. Robert MATTHEWS, Attorney General, Appellant,**

v.

**Robert COATNEY and Vernon Craig, Appellees.**

Court of Appeals of Kentucky.

Nov. 11, 1965.

Rehearing Denied Dec. 17, 1965.

Ben B. Fowler and Dailey & Fowler, Frankfort, for appellant.

John C. Anggelis, Lexington, for appellees.

HILL, Judge.

Appellant, plaintiff below, filed this action seeking the ouster of appellees, members of the Nicholas County Board of Education, for violation of KRS 160.180. The lower court refused the relief sought and dismissed the action. This appeal followed.

We first discuss the situation as it relates to Vernon Craig. He entered into a contract with the Nicholas County Board of Education to transport students by bus during the 1962–63 school term for $231 per month. During September 1962 he became a candidate for election to the Board of Education of Nicholas County and was successful. He was sworn and qualified for the office January 7, 1963. Craig continued to drive his bus and perform the contract until November 30, 1962. He wrote a letter to the superintendent on November 29, 1962, advising that he was "ceasing the performance" effective the following day. He also testified that he requested three members of the board to release him.

Now, the case with regard to Robert Coatney. On May 3, 1963, the Board of Education of Nicholas County and the Carlisle Independent Board of Education by the concurrent action of the two boards merged the two districts. One of the provisions of the merger was that all five members of the Carlisle independent board would serve on the Nicholas County board until their respective terms expired. Robert Coatney was a member of the Carlisle board and as such became a member of the Nicholas County board on May 3, 1963. Coatney was a part owner and operator of a grocery store in Carlisle known as Coatney's I. G. A.

The home economics department of the Nicholas County High School made thirteen separate purchases totaling $55.06 from Coatney's store after the merger date of May 3, 1963. At a meeting on June 25, 1963, of the merged boards, at which Coatney was present, this bill was paid. It was provided in the merger orders that the fiscal affairs of the two school districts be operated separately until June 30, 1963.

Appellant does not contend appellees were guilty of bad faith or failure to give proper value under the transactions in ques-

tion. Appellant argues appellees simply violated the applicable provisions of KRS 160.180, which are as follow:

"(1) No person shall be eligible to membership on a board of education:

"(e) Who, at the time of his election, is directly or indirectly interested in the sale to the board of books, stationery or any other property, materials, supplies, equipment or services for which school funds are expended;

"(2) If, after the election of any member of the board, he becomes interested in any contract with or claims against the board, of the kind mentioned in paragraph (e) of subsection (1) of this section, or becomes a candidate for nomination or election to any office or agency the holding and the discharging of the duties of which would have rendered him ineligible before election, or if he moves his residence from the district for which he was chosen, or if he does anything that would render him ineligible for re-election, his office shall without further action be vacant."

▇▇▇ Appellees counter with the argument that this proceeding was the outgrowth of ill will of the superintendent of schools toward appellees; and that the acts complained of were trivial, unintentional and do not violate either the wording or spirit of the statute in question. The record supports appellees' contention of ill will of the superintendent toward appellees, and it may be true the transactions were trivial and that there was no intention to defraud or to violate the statute. The motive of one who initiates proceedings to enforce a salutary law should not and will not be questioned. It may be contended the above statute is a harsh one. Perhaps this is so in some instances, but it was enacted to eliminate possible conflicts of interest of board members at "the time of" their "election" as well as "after the election." The language is comprehensive and emphatic. The

Legislature clearly demonstrated its intention to enact a positive, firm and unqualified law by the use of such terms as: "No person shall," and "his office shall without further action be vacant."

This Court has consistently given this statute, as well as kindred legislative acts, a strict and literal construction as evidenced by the following quotation from Whittaker v. Commonwealth, 272 Ky. 794, 115 S.W.2d 355, 358 (1938), a similar factual situation:

" * * * Therefore, we cannot escape the conclusion that it was intended that if the conditions named existed at the time of the election, the person affected thereby was disqualified to hold the office of school board member.

" * * * But consideration of possibilities or probabilities, or of purpose, intent, or motive is for the lawmakers rather than the judiciary. The reasons for the passage of a law is for the General Assembly. We may inquire whether or not the particular act transcends any fundamental law. The Legislature, no doubt, considered the prohibition to be salutary. We cannot say that it is not so, nor that in the long run its observance may result in bringing the educational system, as applied in the common schools, to a higher level or standard, as the legislative endeavor seems to have been directed in later years."

Also in the recent case of Commonwealth ex rel. Breckinridge v. Collins, Ky., 379 S.W.2d 436 (1964), this Court consistently followed its strict interpretation rule of KRS 160.180. In the Collins case, the member of the board held to be disqualified had no direct interest in the transaction with the board but was only a stockholder and officer of a corporation that did business with the board. In reversing the lower court this Court said, quoting from

Douglas v. Pittman, 239 Ky. 548, 39 S.W.2d 979, 981 (1931):

"These statutes were enacted as safeguards upon the spending of public funds and with the further view of throwing a wall of protection around the members of such bodies. Their duties as members could not thereby be influenced by selfish interests. The wisdom of such statutes is too apparent to need lengthy discussions."

"Such statute has a salutary purpose and should be so construed. It is plain that appellee made such sales on behalf of a company in which he had a substantial interest and that he had such interest as was intended to be condemned by the statute. In making such sales he vacated the office of board member."

Finally, we conclude appellees violated the letter and spirit of the statute and thereby automatically vacated their respective offices. The judgment is reversed with directions to enter a judgment to conform with this opinion.