**COMMONWEALTH of Kentucky ex rel. Ed W. HANCOCK, Attorney General of Kentucky, Appellant,**

v.

**William G. MARSHALL, Appellee.**

Court of Appeals of Kentucky.

Dec. 9, 1977.

William I. Markwell, Henderson, for appellant.

Charles B. West, Henderson, for appellee.

Before GANT, HOWERTON and WHITE, JJ.

GANT, Judge.

The issue on appeal is whether the appellee, William G. Marshall, forfeited his elected office as a member on the Board of the Henderson City Independent School District because certain school employees or students made purchases of merchandise from a drugstore of which he was an officer, employee and majority stockholder.

The appellee was appointed to fulfill a vacancy on the Board of Education in May of 1968 and he was elected to the same office for a four-year term in November of that same year and was re-elected to another four-year term in 1972. During his tenure in office the appellee has been an officer, employee, and 58%-stockholder of a corporation which owns and operates the T & T Drugstore in Henderson.

When Marshall first assumed office as a school board member, he informed his drugstore employees not to make any sales of merchandise to any of the schools of the Henderson City Independent School District as long as he remained a member of the Board. In 1973 the appellee noticed an attempt by a school secretary to make a purchase of supplies for one of the elementary schools and he intervened to prevent the sale from occurring. Shortly thereafter the appellee again admonished the employees not to make any sales to any of the schools of the city school system.

Since Marshall took office in June of 1968, three of the five elementary schools, the middle school and the high school or class organizations therein, have purchased merchandise totalling $124.87 from the appellee's drugstore on at least fourteen separate occasions. The purchases were made in person or by telephone and all purchases were paid for by check on the schools' internal accounts which were funded by student fees, picture sales, student activities' fees, etc. Some of the merchandise purchased was delivered to the schools. These purchases have never been the subject of action or approval by the Board nor have the purchases been brought to the attention of the Board in any manner.

The accounting records of the T & T Drugstore are maintained by two employees and Marshall rarely reviews these records except when one of the bookkeepers calls his attention to a delinquent account or some unusual matter. The drugstore makes between 200 to 400 separate sales each day and sends out from 600 to 800 separate billing statements each month.

Marshall admits that the sales were made to the schools or to affiliated class organiza-

tions but denies that he personally made or had knowledge of any of the sales. The appellee is only one of three pharmacists who work at the drugstore and they alternate working assignments which result in each pharmacist being absent from the store while it is open for business. The area where the pharmacists work is remote from the main store area where the sales are made and they generally do not observe the customers and clerks transacting the business of the store.

The case came for trial and the jury was instructed to find for Marshall unless he (a) knowingly made one or more sales to any of the schools; or (b) took some affirmative action to cause one or more sales to any of the schools; or (c) knowingly permitted or encouraged any of the employees or officers to make one or more sales to any of the schools; or (d) acquiesced in the conduct of one or more employees in making one or more sales to any of the schools. The instruction further required that the purchases be made with "school funds" which were defined as any activity funds, internal accounts, or central funds, regardless of the source of such funds or the manner in which they were derived. The jury returned a verdict in favor of the defendant/appellee and this appeal followed.

This controversy centers around the interpretation of KRS 160.180 which provides in pertinent part:

(1) No person shall be eligible to membership on a board of education:

. . . . .

(e) Who, at the time of his election, is directly or indirectly interested in the sale to the board of books, stationery or any other property, materials, supplies, equipment or services for which school funds are expended; or

. . . . .

(2) If, after the election of any member of the board, he becomes interested in any contract with or claims against the board, of the kind mentioned in Paragraph (e) of subsection (1) of this section, . . . his office shall without further action be vacant.

Basically, there are two questions presented in this appeal. They are:

(1) Is actual participation in and/or actual knowledge of sales of merchandise necessary in order to have a school board membership declared vacant pursuant to KRS 160.180?

(2) Is an action to declare a school board membership vacant pursuant to KRS 160.-180 triable by a jury as a matter of right?

 The appellant devotes much of its brief to its contention that the president, employee, and majority stockholder of a company selling merchandise to the board comes within the purview of one "indirectly interested" as prohibited by KRS 160.180. The appellant further contends that a profit does not have to be made in order to constitute a violation of the statute and that it is immaterial whether the funds used to make the purchase were the result of an activity fund raised solely by the students. We agree. These principles were accepted by the highest court of this Commonwealth in *Brooks v. Commonwealth*, Ky., 286 S.W.2d 913 (1956); *Douglas v. Pittman*, 239 Ky. 548, 39 S.W.2d 979 (1931); *Commonwealth v. Collins*, Ky., 379 S.W.2d 436 (1964), respectively.

 This Court has reviewed the cases cited by the appellant in support of its contention that actual participation or actual knowledge of the sale is not a necessary element of KRS 160.180. However, none of the cases come to grips with the legal question presented herein and we believe the factual circumstances involved in each differ substantially from the situation presently before us. In *Douglas v. Pittman, supra,* the board member was actually called upon to approve the payment for supplies purchased from the company of which he was president and one-third stockholder. The sole issue in *Commonwealth v. Collins, supra,* is whether activity funds are "school funds" as defined by the statute. The court does not discuss whether Collins had knowledge of the placing of the vending machines in the schools but the facts recited show

that he was the sales manager of the company and that the principals of the schools submitted a monthly report to the Board showing balances in the activity fund accounts and a detailed annual report reflecting income and expenditures from the activity fund was also required. The member of the board in *Commonwealth v. Coatney*, Ky., 396 S.W.2d 72 (1965) was placed in a position of having to approve a claim by his company against the Nicholas County Board of Education. The last case cited by the appellant, *Brooks v. Commonwealth, supra*, is likewise inapplicable since the board member himself sold commodities for the lunch room to the principal of the high school. Thus it is readily apparent that the question of the board member's knowledge of or participation in the sale has never been an issue in any of the reported cases.

The Court of Appeals in *Commonwealth ex rel. Vincent, Atty. Gen. v. Withers*, 266 Ky. 29, 98 S.W.2d 24 (1936) defined the perimeters of self-interest in situations of this type as follows:

> It is a salutary doctrine that he who is intrusted with the business of others cannot be allowed to make such business an object of profit to himself. This is based upon principles of reason, of morality, and of public policy. These are principles of the common law and of equity which have been supplemented and made more emphatic by the foregoing and other statutory enactments . . . In their application and operation it is impossible to lay down any definite rules defining the nature of the interest of the officer, or indicating the line between that which is proper and that which is unlawful. However, the interest is not sufficient to disqualify the officer if the opportunity for self-benefit is a mere possibility or is so remote or collateral, such as being only a debtor, that *it cannot be reasonably calculated to affect his judgment or conduct in the making of the contract or its performance.* (Emphasis added.)

This principle leads us to the conclusion that a member without knowledge of a sale to the board or one not placed in the position of having to approve a contract or sale to the board does not violate the prohibitions or the spirit of the statute. As stated in *Douglas v. Pittman, supra,* the purpose of the statute is to prevent the members from being " . . . influenced by selfish interests" and we do not believe that the imposition of the standards set forth herein lessen the effect of this safeguard.

The highest court of this Commonwealth has held that the separation still remains between jury actions and non-jury causes, and what was, before the adoption of the new Rules of Civil Procedure, an action at law is a "jury action" and what was a suit in equity is a "non-jury action." *Johnson v. Holbrook*, Ky., 302 S.W.2d 608 (1957). In *Richardson v. Commonwealth*, 275 Ky. 486, 122 S.W.2d 156 (1938), the court stated that an injunction to restrain the alleged usurpers falls within the province of equity jurisdiction but that an action in the nature of quo warranto is one at law. The suit before us is generally an action under the statutory substitute for quo warranto and is not in the form of injunctive relief. Thus the issues requiring factual determination are triable at law as a "jury action."

For the above stated reasons, the judgment of the lower court is affirmed.

All concur.